IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
DISTRICT COURT
BRUNSWICK DIV.

2024 MAY -3  P 4: 04

CL⁓⁓ ⁓

| | |
|---|---|
| TRACEY KINSEY, | |
| Plaintiff, | |
| v. | Civil Action File No. |
| WHITE STAR SUPPLY, LLC, and BRADFORD L. SHANKS | CV 2 2 4 - 0 6 2 |
| Defendants. | |

## COMPLAINT

Plaintiff, Tracey Kinsey files the instant Complaint *pro se*, and as and for his

Complaint, respectfully alleges as follows:

## INTRODUCTION

1.

This is an action under Title VII of the 1964 Civil Rights Act, 42 U.S.C.

§§2000e *et seq*. (hereinafter "Title VII"), to correct unlawful employment practices

by Defendant, White Star Supply, LLC, ("White Star") on the basis of race, and

for racial harassment, for unlawful retaliation and retaliatory harassment, and to

provide appropriate relief to Mr. Kinsey who was and continues to be adversely

1

affected by such practices. This is also an action against Defendants White Star and Bradford L. Shanks, under 42 U.S.C. Section 1981 arising from race discrimination, the creation and condonation of a racially hostile and dangerous environment, retaliatory harassment and retaliation.

In particular Mr. Kinsey, who was one of only two or three African American employees at White Star, alleges that he was subjected to differential treatment based on race, and to ongoing and repeated racial harassment that included inter alia statements about being called a "Nigger", and other racial remarks, differential treatment, and having a gun drawn on him and pointed directly at him in the break room on Defendant White Star's premises by a Caucasian co-worker while Mr. Kinsey's Caucasian supervisor's and the Caucasian General Manager laughed. Despite his complaints about racial harassment, and his particular complaint about his extreme fear of being shot by the Caucasian employee who picked up his gun and directly pointed it at Plaintiff as if to shoot him, Bradford Shanks responded that he could not do anything about the situation, because he could not tell his employees that they could not bring their guns into the work premises. Mr. Kinsey was also subjected to a pattern of retaliatory harassment and to retaliation following his repeated complaints including but not limited to being subjected to unique excessive scrutiny, being criticized for leaving work early after he had completed his work when he had received express permission to do so and despite other

2

Caucasian warehouse workers leaving early without consequence, and being constructively discharged.

Mr. Kinsey seeks declaratory, injunctive and equitable relief, and money damages for redress of rights secured to her by the above statutes. Plaintiff also seeks an award of attorneys' fees and costs, pursuant to 42 U.S.C. §1988.

## PARTIES

2.

Plaintiff, Tracey Kinsey is an African American male natural person residing in Brunswick, Georgia and is a United States citizen.

3.

Mr. Kinsey was an employee of Defendant White Star within the meaning of Title VII.

4.

On information and belief, White Star is a domestic nonprofit corporation registered with the State of Georgia with its principal office address at 1760 Memorial Drive, Waycross GA 31501.

5.

According to the 2024 corporate registration information on the Georgia Secretary of State's Registered Corporation website, White Star's agent for service of process is Bradford L Shanks at 713 Hamilton Landing Drive, St. Simon's Island, GA 31522.

3

6.

On information and belief, White Star is an "employer" within the meaning of Title VII, as it is engaged in an industry affecting interstate commerce and at all relevant times employed (and employs) more than 15 employees.

6.

White Star is subject to suit under 42 U.S.C. §1981.

7.

On information and belief, Bradford L Shanks ("Mr. Shanks") is a Caucasian male resident of the state of Georgia, in the Southern District, Brunswick Division.

8.

On information and belief, at all relevant times and continuing, Mr. Shanks is an owner and employee of Defendant White Star.

9.

Mr. Shanks is subject to individual suit under 42 U.S.C. §1981.

10.

Mr. Shanks may be served as provided by the Federal Rules or pursuant to O.C.G.A. § 9-11-4.

## JURISDICTION AND VENUE

11.

4

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 for violations of Acts of Congress providing for equal rights of citizens. The jurisdiction of this Court is also invoked pursuant to 42 U.S.C. §§2000e *et seq.* ("Title VII") and 42 U.S.C. §1981.

12.

Venue is proper in this district and division under 28 U.S.C. §1391 because White Star conducts business in this District and Division, the unlawful actions and practices alleged herein were committed within the Southern District of Georgia.

## NATURE OF THIS ACTION

13.

This complaint raises claims under Title VII for unlawful race discrimination, racial harassment, retaliatory harassment and retaliation. The complaint seeks declaratory and permanent injunctive relief, reinstatement or front pay in lieu thereof, and damages for redress of rights secured to Plaintiff by Title VII and 42 U.S.C. §1981 in addition to an award of attorneys' fees and costs, pursuant to 42 U.S.C. §1988.

## ADMINISTRATIVE PROCEDURES
## AND SATISFACTION OF CONDITIONS PRECEDENT

14.

5

Mr. Kinsey started working for White Star in or about October 2022 as a warehouse worker.

15.

On December 1, 2023, after enduring a continuously racially hostile work environment, Mr. Kinsey was constructively discharged on December 1, 2023, following repeated incidents of racial harassment including a Caucasian member of management drawing and pointing a gun directly at him in the breakroom while other coworkers and supervisors, including the GM laughed. Mr. Kinsey had complained to his supervisors and to Mr. Shanks on repeated occasions, including telling Mr. Shanks that he could not continue to work in a racist environment where a gun would be pointed directly at him on work premises. Mr. Shanks responded that there was nothing he could do; that he could not stop employees from bringing their guns to work and having those guns in open view and ready access, because otherwise he would not have any employees. Mr. Kinsey could not continue to work in a racist environment where he feared for his life, and the owner refused to remedy the harassment which put Mr. Kinsey in reasonable fear for his life.

16.

Mr. Kinsey timely filed an EEOC Charge on January 22, 2024 alleging race and color discrimination and retaliation.

17.

The EEOC issued a Right to Sue letter on February 6, 2024.

18.

This Complaint is being timely filed within 90 days of receipt of the Right to Sue letter.

19.

All conditions precedent to maintaining this action have been met.

## FACTS

20.

Mr. Kinsey is an African American male.

21.

Mr. Kinsey started his employment at White Star as a warehouse worker in or about October 2022.

22.

On information and belief, throughout his employment, Mr. Kinsey and one or two other African Americans were the only African American employees at White Star, which on information and belief, is a company of 40-50 employees.

23.

Mr. Kinsey was the only African American working in the warehouse at the Brunswick location.

7

24.

According to its website, White Star is a family owned business, owned by Bradford and Kimsey Shanks, which is in the business of providing electrical and plumbing supplies.

25.

Mr. Kinsey reported directly to Ryan _____ who is Caucasian.

26.

The General Manager at the Brunswick location where Mr. Kinsey worked is Tim _____ who is Caucasian.

27.

Mr. Bradford Shanks and Ms. Kimsey Shanks, who are the owners, are Caucasian.

28.

On information and belief, Mr. and Ms. Kinsey were involved in the day to day operations of White Star's Brunswick location, including regarding Mr. Kinsey's complaints about racism and the gun incident.

29.

Throughout his employment, Mr. Kinsey was subjected to differential treatment based on his race, as well as to a racially hostile work environment.

8

30.

Repeatedly, day in and day out Mr. Kinsey was subjected to racist remarks, including being asked if it was okay to be called a "Nigger", mimicking him as if he was Ray Charles and asking him if he could sing, references to how "blacks" are, comments about his "gold" tooth, inappropriate jokes with racial connotations, being told that "my boy" is okay with being referred to as "Nigger", and being referred to as the "big black guy". Other comments were comments about Stevie Wonder being so black he would be blind, and repeated comments implying that he was a criminal or sold drugs because he has gold teeth and a nice car. This racial stereotyping extended to coworkers commenting that when Mr. Kinsey's wife brought him things to work on a few occasions that she was making a "drop" for him or an illegal drug transaction.

31.

These comments were made by Caucasian co-workers often in the presence of Caucasian supervisors and the Caucasian GM.

32.

Mr. Kinsey repeatedly complained about the racist environment to his supervisors as well as to the owner, Brad Shanks.

33.

Mr. Kinsey was "watched" as if he was a criminal. He was the only African American working in the warehouse. When Mr. Kinsey was alone in the warehouse,

9

his supervisor, Ryan, a Caucasian, paced back and forth, watching him, not saying anything. When other Caucasian employees worked in the warehouse alone, they were not subjected to the same scrutiny, and uncomfortable watching.

34.

When Mr. Kinsey started, he was told by management that if he had completed his work, he could leave early. Nevertheless, on one occasion, Mr. Kinsey was "chewed" out by Mr. Shanks for leaving early, after all of his work had been completed, even though similarly situated Caucasians routinely left early before their shift end, without consequence.

35.

On the occasion of the gun incident, Mr. Kinsey was leaving from the breakroom in which several members of managements and other coworkers were present, all of whom were Caucasian. A member of management pulled out a gun and pointed it directly at Mr. Kinsey, causing him to freeze and panic in fear that he would be shot. All of the other Caucasian individuals who were present started to laugh, and not a single member of management said anything or did anything to indicate that pulling a gun and pointing it at Mr. Kinsey as if to shoot him was a violation of the company's policy.

36.

The inaction of the Caucasian employees, particularly the members of

10

management, was a direct violation of White Star's purported policy against workplace violence.

37.

When Mr. Kinsey complained to Brad Shanks himself about the incident, Mr. Shanks responded that there was nothing he could do. This conversation involved Mr. Kinsey's further complaint about racism, which he had previously raised to Mr. Shanks on several occasions.

38.

On information and belief, the wife (NAmE) of one of Mr. Kinsey's coworkers, Unknown Mark Lang, was so upset about the incident, that she had sent an email to the corporate office of White Star, stating that this (the gun incident) was "racist" and "was wrong."

39.

The racist environment never changed, and Mr. Kinsey resigned because he could not work in an environment permeated with racism, where the owner stated that he could not prevent his employees from bringing guns into the work premises in plain view that could be used to assault Mr. Kinsey. Mr. Kinsey was afraid for his life, suffered humiliation and anxiety and could not continue to work at Defendant White Star under those circumstances.

40.

The Defendants' actions have caused Mr. Kinsey economic loss and severe

11

emotional distress. As a result of Defendants' actions Mr. Kinsey feared for his life, was humiliated and intimidated, became anxious, and continues to suffer inter alia from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race.

**FIRST CAUSE OF ACTION**
**(Title VII – Race Discrimination)**
**(Against White Star)**

41.

Mr. Kinsey realleges ¶¶1-40 with the same force and effect a6s if set forth fully herein.

42.

Mr. Kinsey realleges the allegations contained in (¶¶2-10) regarding the parties, (¶¶11-12) regarding jurisdiction and venue, (¶1,13) regarding nature of the action, and (¶¶ 14-19) regarding administrative proceedings and satisfaction of conditions precedent.

43

Mr. Kinsey is African American. Mr. Kinsey was one of only two or three African American employees in a predominantly Caucasian workforce at Defendant White Star.

44.

Mr. Kinsey was qualified as a warehouse worker.

12

45.

Mr. Kinsey was subjected to different terms and conditions of employment and to various adverse employment actions because of his race which was a motivating factor, including *inter alia*:

1) being subjected to racially motivated harassment and an environment permeated with racial hostility;

2) being unfairly criticized for leaving early when he was expressly given permission to do so and when Caucasian employees routinely left early without consequence;

3) being passed over for transfer to a better work area in favor of a Caucasian employee with less seniority; and

4) being constructively discharged on December 1, 2023.

46.

Racial animus was clearly communicated by repeated racial comments, jokes, derogatory stereotypes, reference to "boy" in the context of "Nigger", asking Mr. Kinsey about calling him "Nigger", referring to him as a "big black guy", pulling a gun out and pointing it directly at him in the company's breakroom which caused the Caucasian observers, including those in management to laugh,  but which even the wife of a coworker wrote to the company was "racist" and "wrong."

13

47.

Mr. Kinsey is unaware of whether White Star had an antidiscrimination policy, but on information and belief, White Star had an antiviolence policy which obligated any employee or member of management to report any incidents of violence or threats of violence, and which also stated that any such incidents would be investigated. Mr. Kinsey was never apprised of any reports having been made, other than as noted above, by the wife of a co-worker who was so troubled that she wrote to the company. When Mr. Kinsey complained to Mr. Shanks himself about this incident avid his recurring complaints about racism, and his specific discussion with Mr. Shanks about this in the context of racism, Mr. Shanks responded that there was nothing he could do.

48.

Mr. Kinsey was constructively terminated on December 1, 2023 because of his race, which was at least a motivating factor.

49.

Mr. Kinsey has suffered mental, emotional and economic damages as a result of Defendant's aforesaid unlawful actions. Mr. Kinsey continues to suffer from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race. Defendant's aforesaid unlawful actions were done with intent

14

to unlawfully discriminate against/ and/or deprive Mr. Kinsey of his rights or with
reckless disregard of his rights and were wanton and willful so as to make
appropriate an award for punitive damages.

## SECOND CAUSE OF ACTION
### (Title VII – Racially Motivated Harassment/Hostile Environment)
### (Against White Star)

#### 50.

Mr. Kinsey realleges ¶¶1-40 with the same force and effect a6s if set forth
fully herein.

#### 51.

Mr. Kinsey  realleges the allegations contained in (¶¶2-10) regarding the
parties, (¶¶11-12) regarding jurisdiction and venue, (¶1,13) regarding nature of the
action, and (¶¶ 14-19) regarding administrative proceedings and satisfaction of
conditions precedent.

#### 52.

Mr. Kinsey is African American. Mr. Kinsey was one of only two or three
African American employees in a predominantly Caucasian workforce at Defendant
White Star, and the only African American worker in the warehouse.

#### 53.

From the inception of his employment Mr. Kinsey was subjected to a hostile
work environment based on racial animus.

54.

Mr. Kinsey realleges 1, 15, 29-39 which set forth that he was harassed and subjected to an objectively hostile work environment.

55.

Mr. Kinsey realleges ¶¶1, 15, 29-40 setting forth that Mr. Kinsey subjectively perceived the above-described environment to be hostile, that he feared for his life, was humiliated and intimidated, became anxious, and continues to suffer from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race.

56.

Mr. Kinsey repeatedly complained about racially motivated discrimination to his supervisors and to the owner, Brad Shanks, who took no steps to investigate or remedy the harassment. In fact, Mr. Shanks specifically told him that he could not do anything about Caucasian employees bringing guns onto the work premises, despite the fact that a Caucasian manager had picked up a gun and pointed it directly at Mr. Kinsey.

57.

White Star is liable for the racially motivated hostile environment, including the constructive discharge of Mr. Kinsey.

58.

16

Mr. Kinsey has suffered mental, emotional and economic damages as a result of Defendant's aforesaid unlawful actions. Mr. Kinsey continues to suffer from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race. Defendant's aforesaid unlawful actions were done with intent to unlawfully discriminate against/ and/or deprive Mr. Kinsey of his rights or with reckless disregard of his rights and were wanton and willful so as to make appropriate an award for punitive damages.

**THIRD CAUSE OF ACTION**
**(Title VII – Retaliatory Harassment and Retaliation)**
**(Against White Star)**

59.

Mr. Kinsey realleges ¶¶1-40 with the same force and effect a6s if set forth fully herein.

60.

Mr. Kinsey  realleges the allegations contained in (¶¶2-10) regarding the parties, (¶¶11-12) regarding jurisdiction and venue, (¶1,13) regarding nature of the action, and (¶¶ 14-19) regarding administrative proceedings and satisfaction of conditions precedent.

61.

Mr. Kinsey is African American. Mr. Kinsey was one of only two or three African American employees in a predominantly Caucasian workforce at Defendant

17

White Star, and the only African American worker in the warehouse.

62.

From the inception of his employment Mr. Kinsey was subjected to a hostile work environment based on racial animus.

63.

On repeated occasions, Mr. Kinsey complained about differential treatment based on his race and about a racially hostile work environment, to different people in management, and to the owner, Bradford Shanks.

64.

Following his complaints, he was subjected to unique excessive scrutiny, was denied transfer to a more advantageous area of the warehouse to work in, was unequally criticized for leaving work early whereas his Caucasian coworkers routinely left work early without consequence, was subjected to having a gun pulled out by a manager and pointed directly at him, and was constructively discharged.

65.

The aforementioned acts, constitute retaliation, and together constitute a pattern of unlawful retaliatory harassment which collectively would tend to dissuade an employee from complaining about unlawful discrimination and harassment.

66.

18

Mr. Kinsey has suffered mental, emotional and economic damages as a result of Defendant's aforesaid unlawful actions. Mr. Kinsey continues to suffer from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race. Defendant's aforesaid unlawful actions were done with intent to unlawfully discriminate against/ and/or deprive Mr. Kinsey of his rights or with reckless disregard of his rights and were wanton and willful so as to make appropriate an award for punitive damages.

## FOURTH CAUSE OF ACTION
### (42 U.S.C §1981 – Race Discrimination against White Star and Bradford Shanks)

67.

Mr. Kinsey realleges ¶¶1-40 with the same force and effect a6s if set forth fully herein.

68.

Mr. Kinsey  realleges the allegations contained in (¶¶2-10) regarding the parties, (¶¶11-12) regarding jurisdiction and venue, (¶1,13) regarding nature of the action, and (¶¶ 14-19) regarding administrative proceedings and satisfaction of conditions precedent.

69.

Mr. Kinsey is African American. Mr. Kinsey was one of only two or three African American employees in a predominantly Caucasian workforce at Defendant White Star.

19

70.

Mr. Kinsey was qualified as a warehouse worker.

71.

Mr. Kinsey was subjected to different terms and conditions of employment and to various adverse employment actions because of his race which was a motivating factor, including *inter alia*:

1) being subjected to racially motivated harassment and an environment permeated with racial hostility;

2) being unfairly criticized for leaving early when he was expressly given permission to do so and when Caucasian employees routinely left early without consequence;

3) being passed over for transfer to a better work area in favor of a Caucasian employee with less seniority; and

4) being constructively discharged on December 1, 2023.

72.

Racial animus was clearly communicated by repeated racial comments, jokes, derogatory stereotypes, reference to "boy" in the context of "Nigger", asking Mr. Kinsey about calling him "Nigger", referring to him as a "big black guy", pulling a gun out and pointing it directly at him in the company's breakroom which caused the Caucasian observers, including those in management to laugh,  but which even the

20

wife of a coworker wrote to the company was "racist" and "wrong."

73.

Mr. Kinsey is unaware of whether White Star had an antidiscrimination policy, but on information and belief, White Star had an antiviolence policy which obligated any employee or member of management to report any incidents of violence or threats of violence, and which also stated that any such incidents would be investigated. Mr. Kinsey was never apprised of any reports having been made, other than as noted above, by the wife of a co-worker who was so troubled that she wrote to the company. When Mr. Kinsey complained to Mr. Shanks himself about this incident amid his recurring complaints about racism, and his specific discussion with Mr. Shanks about this incident in the context of racism, Mr. Shanks responded that there was nothing he could do.

74.

Mr. Kinsey was constructively terminated on December 1, 2023 because of his race.

75.

White Star is liable for race discrimination under 42 U.S.C. §1981. This above-described conduct deprived Mr. Kinsey of the right to be free from interference with entering into contracts based on his race in violation of §1981.

76.

21

Defendant Bradford Shanks is individually liable under 42 U.S.C. §1981 for his own actions in intentionally refusing to address Mr. Kinsey's complaints about racial harassment and discrimination, including a Caucasian manager's pointing a gun directly at Mr. Kinsey in the break room on the premises of White Star, and specifically telling Mr. Kinsey that there was nothing he could do.

77.

Mr. Kinsey has suffered mental, emotional and economic damages as a result of Defendants' aforesaid unlawful actions. Mr. Kinsey continues to suffer from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race. Defendants' aforesaid unlawful actions were done with intent to unlawfully discriminate against/ and/or deprive Mr. Kinsey of his rights or with reckless disregard of his rights and were wanton and willful so as to make appropriate an award for punitive damages.

### FIFTH CAUSE OF ACTION
### (42 U.S.C. Section 1981– Racially Motivated Harassment against White Star and Bradford Shanks)

78.

Mr. Kinsey realleges ¶¶1-40 with the same force and effect a6s if set forth fully herein.

79.

Mr. Kinsey  realleges the allegations contained in (¶¶2-10) regarding the

22

parties, (¶¶11-12) regarding jurisdiction and venue, (¶1,13) regarding nature of the action, and (¶¶ 14-19) regarding administrative proceedings and satisfaction of conditions precedent.

80.

Mr. Kinsey is African American. Mr. Kinsey was one of only two or three African American employees in a predominantly Caucasian workforce at Defendant White Star, and the only African American worker in the warehouse.

74.

From the inception of his employment Mr. Kinsey was subjected to a hostile work environment based on racial animus.

81.

Mr. Kinsey realleges 1, 15, 29-39 which set forth that he was harassed and subjected to an objectively hostile work environment.

82.

Mr. Kinsey realleges ¶¶1, 15, 29-40 setting forth that Mr. Kinsey subjectively perceived the above-described environment to be hostile, that he feared for his life, was humiliated and intimidated, became anxious, and continues to suffer from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race.

83.

23

Mr. Kinsey repeatedly complained about racially motivated discrimination to his supervisors and to the owner, Brad Shanks, who took no steps to investigate or remedy the harassment. In fact, Mr. Shanks specifically told him that he could not do anything about Caucasian employees bringing guns onto the work premises, despite the fact that a Caucasian manager had picked up a gun and pointed it directly at Mr. Kinsey.

84.

White Star is liable for the racially motivated hostile environment, including the constructive discharge of Mr. Kinsey. This above-described conduct deprived Mr. Kinsey of the right to be free from interference with entering into contracts based on his race in violation of §1981.

85.

Defendant Bradford Shanks is individually liable under 42 U.S.C. §1981 for his own actions in intentionally refusing to address Mr. Kinsey's complaints about racial harassment and discrimination, including a Caucasian manager's pointing a gun directly at Mr. Kinsey in the break room on the premises of White Star, and specifically telling Mr. Kinsey that there was nothing he could do.

86.

Mr. Kinsey has suffered mental, emotional and economic damages as a result

24

of Defendant's aforesaid unlawful actions. Mr. Kinsey continues to suffer from

anxiety, emotional distress and hyper vigilance arising from his concern about injury

to him due to his race. Defendant's aforesaid unlawful actions were done with intent

to unlawfully discriminate against/ and/or deprive Mr. Kinsey of his rights or with

reckless disregard of his rights and were wanton and willful so as to make

appropriate an award for punitive damages.

<u>SIXTH CAUSE OF ACTION</u>
<u>(42 U.S.C. §1981– **Retaliation** *and* **Retaliatory Harassment**)</u>
<u>(Against White Star and Bradford Shanks)</u>

87.

Mr. Kinsey realleges ¶¶1-40 with the same force and effect a6s if set forth

fully herein.

88.

Mr. Kinsey  realleges the allegations contained in (¶¶2-10) regarding the

parties, (¶¶11-12) regarding jurisdiction and venue, (¶1,13) regarding nature of the

action, and (¶¶ 14-19) regarding administrative proceedings and satisfaction of

conditions precedent.

89.

Mr. Kinsey is African American. Mr. Kinsey was one of only two or three

African American employees in a predominantly Caucasian workforce at Defendant

25

White Star, and the only African American worker in the warehouse.

90.

From the inception of his employment Mr. Kinsey was subjected to a hostile work environment based on racial animus.

91.

On repeated occasions, Mr. Kinsey complained about differential treatment based on his race and about a racially hostile work environment, to different people in management, and to the owner, Bradford Shanks.

92.

Following his complaints, he was subjected to unique excessive scrutiny, was denied transfer to a more advantageous area of the warehouse to work in, was unequally criticized for leaving work early whereas his Caucasian coworkers routinely left work early without consequence, was subjected to having a gun pulled out by a manager and pointed directly at him, and was constructively discharged.

93.

The aforementioned acts, constitute retaliation, and together constitute a pattern of unlawful retaliatory harassment which collectively would tend to dissuade an employee from complaining about unlawful discrimination and harassment.

94.

White Star is liable under 42 U.S.C. §1981 for retaliatory harassment and

retaliation.

95.

Defendant Bradford Shanks is individually liable under 42 U.S.C. §1981 for his own actions in intentionally refusing to address Mr. Kinsey's complaints about racial harassment and discrimination, including a Caucasian manager's pointing a gun directly at Mr. Kinsey in the break room on the premises of White Star, and specifically telling Mr. Kinsey that there was nothing he could do.

96.

This conduct deprived Mr. Kinsey of the right to be free from interference with his entering into contracts based on his race in violation of §1981.

96.

Mr. Kinsey has suffered mental, emotional and economic damages as a result of Defendant's aforesaid unlawful actions. Mr. Kinsey continues to suffer from anxiety, emotional distress and hyper vigilance arising from his concern about injury to him due to his race. Defendant's aforesaid unlawful actions were done with intent to unlawfully discriminate against/ and/or deprive Mr. Kinsey of his rights or with reckless disregard of his rights and were wanton and willful so as to make appropriate an award for punitive damages.

WHEREFORE, Plaintiff seeks the following relief:

1. That process issue and this Court take jurisdiction over this case;

2. Judgment against Defendant and for the Plaintiff;

3. Compensatory damages for the Defendant's violations of law enumerated herein embodying make-whole relief for Plaintiff's economic damages, including but not limited to full back-pay and benefits of employment,

4. Damages for mental anguish;

5. Damages for injury to Plaintiffs professional reputation and damage to his career;

6. Judgment against Defendant and for Plaintiff, affording declaratory relief, and permanently enjoining Defendant from future violations of laws enumerated herein;

7. Appropriate injunctive relief;

8. Reinstatement;

9. Front pay in the event that reinstatement is not possible;

10. Damages for future pecuniary loss;

11. Punitive Damages;

12. Prejudgment interest and post-judgment interest;

13. Attorneys' fees, expert witness fees, costs and disbursements of this action;

14. All equitable relief that is allowed by law; and

15. Such other and further relief as this Court deems appropriate.

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

This 3rd day of May 2024.

I swear that the foregoing is true under penalty of perjury.

TRACEY KINSEY
18 Settlers Cove Drive
Brunswick, GA 31520
(561)260-6323
TRAYSIMPSON@YAHOO.COM